Good morning, your honors. May it please the court. My name is Alfonso Maldonado, a certified law student under direct supervision of Andrew Knapp, representing Mr. Juan Beltran. At this point, I'd like to reserve two minutes for rebuttal. Your honors, the BIA dismissed Mr. Beltran's appeal, citing a regulation that renders the IJ's decision to deport as final upon waiver of appeal. Mr. Beltran petitions this court to invalidate the board's regulation defining finality under 8 CFR 1003.39 and remand the case back to the BIA because the regulation is inconsistent with the statutory definition of finality. In Ocampo v. Holder, this court resolved a similar issue. There, it was the non-citizen who relied on a regulation that provided that his order of deportation would not become final until he overstayed his voluntary departure period. In reviewing his motion to reopen, the BIA cited the definition of finality found in the statute and denied the non-citizen's motion. The court found that the statute defining finality was clear and unambiguous as to when the removal order becomes final and reiterated that a regulation may not serve to amend a statute nor add to a statute something which is not there. Mr. Beltran was represented by counsel? Yes, your honor, during some some proceedings. Before the IJ? Yes. Did the counsel waive appeal? Your honor, the the IJ did... Not what the IJ said. Did the counsel for Beltran state words, the substantial effect of which were that he waived appeal? Yes, your honor. However, that is not dispositive because the uh the regular the statutory language states that the waiver, I mean that a order does not become final until or upon the happening of two scenarios. And one question is finality, right? It doesn't become final until the alien leaves the country. But what's wrong with the waiver becoming effective upon it being enunciated? Well, your honor, the waiver does become effective. However, it does not finalize the IJ's order of deportation. And the BIA uses the IJ's decision to not consider Mr. Beltran's appeal. The IJ's order was considered final and thereby the BIA applying the regulation faithfully dismissed Mr. Beltran's appeal. The IJ did not give Mr. Beltran a proper appeal hearing, did not give Mr. Beltran a hearing briefing schedule that allowed Mr. Beltran to contest the the advice given to him by the IJ. The regulation states that there's a regulation 8 CFR 1240.11 states that the immigration judge shall inform the alien of all of his or her apparent eligibility. Mr. Beltran contends that he was not informed of all his apparent eligibility. And when he appealed to the BIA, the BIA dismissed his appeal because he said that the IJ's order was final. What was missing in the IJ's explanation of the available relief to Mr. Beltran? Mr. Beltran was informed that he was not eligible for cancellation of removal. However, the record suggests that there is inferences where Mr. Beltran could have qualified for cancellation of removal, especially after indicating that Mr. Beltran did not, once the police were called for a domestic violence, somebody had to go to jail and he was not going to leave his children without their mother. Mr. Beltran mentions that it was a misunderstanding and that should have prompted the IJ to further inquire as a case law of Moran Enriquez dictates that even if apparent eligibility is not eligible to the non-citizen or his attorney, the IJ must inform the non-citizen of these apparent eligibilities. The court in Moran Enriquez said that they read apparent eligibility to mean that where the record fairly reviewed by an individual who is intimately familiar with the immigration laws as the IJ's no doubt doubtedly are, it raises a reasonable possibility that a petitioner may be eligible for relief. The IJ must advise the alien of his possibility and give him the opportunity to develop the issue. Mr. Beltran was not given that opportunity and is it your argument that any time there is a criminal conviction that is at issue or actually not at issue, there is a criminal conviction in the record, a casual statement in the course of the IJ's interview with the petitioner is enough to warrant reexamining the conviction? I am not quite clear how your argument works out because does that mean that every criminal conviction is challengeable if the defendant makes a casual statement, I didn't do it? No, your honor, but it is important here to recognize that the statute itself provides an exception specifically for convictions of domestic violence and the case law suggests that if the IJ's are to be or with this sort of law that they should have recognized that a waiver exists for convictions of domestic violence as was Mr. Beltran. If the IJ would have inquired further to clarify any of the issues and to determine based on what Mr. Beltran testified after inquiring further that Mr. Beltran would have not been eligible for cancellation of removal, then it would have been sufficient, but here the IJ did not inquire further to clarify the ambiguities. Mr. Beltran then sought to seek review from the BIA and the BIA dismissed his appeal saying that the claim that the regulation, I mean that the IJ's advisal was not Mr. Beltran did qualify for cancellation of removal or the BIA did not consider whether the IJ did not advise the non-citizen of apparent eligibility. The BIA applied this regulation that we asked this court to invalidate and dismissed Mr. Beltran's appeal. The BIA has jurisdiction to hear this case, but it simply dismissed it by faithfully applying the regulation which is inconsistent with the statutory definition of finality. About the issue of reapplying for TPS, do you want to talk to that as a failure of instructions? Yes your honor, in fact our brief suggests that Mr. Beltran was potentially eligible for various forms of relief including TPS as one of them. Mr. Beltran only had one conviction and he said that he previously had voluntary departure which he could have been available for once he told the IJ that he did not want to waive appeal. It seems to me counsel for you to prevail in this case, you don't need to hit the home run that you started with. I'm from San Diego so I'm a Padres, not a lot of home runs, but it seems to me that the single you're looking for is what my colleague just raised, the idea that the TPS discussion with the IJ was insufficient. Is that correct that if you prevail on that, that your client was not properly advised of his potential relief under TPS, that at a minimum this case has to go back to the agency, is that right? Yes your honor, that he was not fully advised of his apparent eligibility and if there are no further questions I'd like to reserve the Good morning your honors, may it please the court, my name is Jesse Carlson on behalf of the government. Your honors, in this case the board appropriately and correctly concluded that petitioner knowingly, intelligently, and voluntarily waived his right to appeal before the IJ's decision. Petitioner was properly advised about his eligibility for relief, he was properly advised about the implications of waiving his appeal, and he actually properly advised about eligibility to reapply for TPS. Let's focus in on that for a minute. Sure your honor. Your honor, in this, based on this record and the record before the immigration judge, petitioner admitted that he had two misdemeanor convictions. He had admitted that he had a conviction for DUI and he admitted that he had a conviction for a domestic violence offense. So, well the record shows that he was convicted of domestic violence. That's correct. The record doesn't show anything about the other offenses does it, other than what he said? Well, certainly that the testimony of petitioner himself was considered by the IJ in this situation. So, the standard by which an IJ would be held to appropriately advise an individual is whether the relief would be readily apparent to the IJ at the time of the hearings. And in this situation, the issue with regard to the TPS, if the IJ believed that the individual had two misdemeanor convictions, that issue would not have been readily apparent at the time of the hearing. That's also something that counsel for the petitioner could have identified. There's actually nothing in this record, there is no motion to reopen or an ineffective assistance of counsel claim that has been made. But is there anything in the record to support the idea that he in fact was convicted of a DUI or maybe he was confused and thought he was arrested for a DUI and got that mixed up with a conviction? Like I said, I don't believe there are any actual conviction documents with regard to the DUI, but there's certainly his testimony making that statement. So, what would the harm be to have to go back and have the agency actually pull up the records to make sure that he in fact was convicted of a DUI and it wasn't simply him being arrested for it, for example? Well, in this instance, your honor, again, petitioner had counsel, he had the ability, those things could have been thoroughly discussed and presented by counsel before the immigration judge. He had several hearings before the immigration judge where counsel was present. These things were discussed and there was an opportunity to make that claim. So, it's the government's position that that's not necessary in this case. Ms. Carlson, I read the record of the hearings, the transcript of the hearings in this case, and they dragged on for an extended period of time. His counsel kept changing and the IJ from one hearing to the next couldn't remember, according to the transcript, what had transpired at the earlier hearings. So, I don't know how he could have possibly alerted this petitioner to the possibilities that were out there from reading that transcript. Perhaps I misread the transcript. Well, your honor, I believe that his counsel was consistent for at least a couple of hearings and during those times, you know, there were continuances so counsel could become familiar with the case. Certainly petitioner, I believe there were a couple of instances, but counsel did have time, there was sufficient time to become familiar with the facts of the case and to make, you know, to make requests of the IJ and to present a case that would be, you know, sufficient at that time. You know, we're looking at two different situations. There was actually, with regard to the waiver, counsel actually had time, they took time off the record to thoroughly discuss that issue as well as to whether or not petitioner wanted to waive his right to appeal. So, there was, this wasn't a situation where, you know, there were also no requests for additional time. The counsel did not make any requests to take additional time to contemplate the voluntary departure option, which, you know, the record doesn't reflect there was even a request of that nature. I must confess that I'm not as familiar with these immigration cases as my colleagues on the Ninth Circuit, but if the test is whether the petitioner had a knowing and intelligent understanding of anything, I would be astounded on the basis of this record if he knew anything that was going on. But is this pretty typical? Well, Your Honor, there, as many of the cases that petitioner cites in his brief involve situations that were much, much more, they were very different than this situation. They involved individuals who didn't have counsel throughout proceedings. And so, some, many of those cases address waivers of appeal for individuals who never had the option of talking to counsel at all. That's not the case we're dealing with here. We're dealing with a situation where there were ample hearings, there were a couple of hearings, there was time to talk to counsel. So we do, you know, as the cases you probably reviewed will demonstrate, there are situations that, you know, where aliens, you know, didn't have the opportunity. There are situations where the IJs didn't go into as great a detail as this IJ did and providing the options to the petitioner as to things he could contemplate with regard to relief. Counsel, I was curious on the TPS question. I see in your brief on page 18, you talk about how he wasn't eligible because he had these two misdemeanor convictions. Is there any other reason why he would be ineligible for TPS? Let's assume the DUI conviction, it was only an arrest and not a conviction. Is there another reason why he would not be eligible for TPS, or is it just those two convictions? Your Honor, I believe, you know, what our brief states is correct, but I would have to defer to, you know, the case would, to be thoroughly analyzed, you know, it would be, as But on its face, to me, it appears that those two convictions were what would have precluded his. What I mean is that, is there another, is there any other reason why he would be ineligible for TPS? Like, for example, there could be, he wasn't in the country long enough, or if a certain type of one, if he committed one crime and he murdered someone, and maybe you're not eligible for TPS, I don't know. Are there any other bars to his relief as far as you're concerned? Your Honor, there might be other requirements that are not apparent on the face of our document or in the you know, a relatively specific form of relief, and so I would, I would rather, rather not say that there's nothing else, because certainly if that were something that were explored, there could be, there could be another issue. Sure, so at this time, you're not asserting anything else, but you're reserving the ability to suggest maybe in the future there wouldn't be. Correct, Your Honor. Thank you. The judge asked him, sir, the only crime that you've ever been convicted of is his TPS. Where is there in the record an admission to a conviction for DUI? Your Honor, earlier... I think there also, he mentioned some other maybe citations for driving without a license. Correct, Your Honor. That's later in the record. Earlier in the record, and one, I think there are two instances, and I can try to point you in the direction if you'd like me to, but there are a to the record, please. Sure, Your Honor. Give me just one moment here. I just looked at that earlier, but... The judge says to Mr. 60, in terms of anything significant, he has a domestic violence, he has a DUI, so I'm not sure what he's eligible for. That's the judge saying that. That's right. I think it was at one of his earlier hearings, Your Honor, he mentioned he admitted to the judge. I'll see hearings what criminal history... Try page 51, see if that, of the record, see if that helps. I apologize, Your Honor. Yes. Page 51, I believe that would have been the government's counsel, I believe he has a DUI in 2001 was a reference. I think there was an additional, perhaps an additional reference where... His attorney says he has a DUI in 2001. That's the admission? No, sir. No, Your Honor. The alien himself had indicated that earlier. Page 49. In the record. Back in 2001, I had a DUI, but I completed everything they asked for. Right, so... So that's why it gets to some of our questions. You could have a situation where someone's arrested for DUI, but if you complete some program, no convictions actually entered. Correct? That information is not in the record, so... And if that were the case, I know there's a lot of ifs in our questions today, but if that were the case, then if there actually is no conviction for DUI, then the argument that he would be ineligible for TPS on page 18 of your brief would turn out not to be correct in this case. Your Honor, I wouldn't want to go that far without making... The agency would make other determinations, but based on the face of our brief, that appears to be the main point, the main barrier that the IJ probably, not to speculate, but the apparent issue. There could be other things, so... Sure, sure. But that would be the apparent issue. Ms. Carlson, one other quick question, and I realize you're out of time. As I understand the record, Mr. Belton took pre-conclusion voluntary departure. Yes, Your Honor. He could have waited until after there was a conclusion and then talked about post-conclusion departure, couldn't he? Yes, Your Honor. Should the IJ have explained that set of options to him? Your Honor... I don't see anything in the record where the IJ even gave him that option or instructed him on it. Your Honor, in this instance, there are different benefits and advantages to different kinds of voluntary departure. In this situation, while the IJ did not indicate the distinction, the IJ did... There's an issue with regard to timing, and so with regard to the pre-conclusion voluntary departure, it has to be... The individuals have to be apprised of that early on in order to be eligible for that. So, in this instance, the IJ did make sure to apprise Mr. Beltran of that opportunity early on. Now, with regard to the... There are advantages to taking that earlier form voluntary departure. In this situation, there is no bond required. If he were to take the other option, there would have been a significant amount to be paid in bond, and as our... You do agree that was an option that he was not instructed about? Well, yes, that's... That's a yes or no. Yes, Your Honor. That is another option. However, there are, as I mentioned, there are reasons perhaps why the IJ might have focused on the pre-conclusion, particularly the significant bond the IJ was aware. But isn't the IJ required to instruct the alien as to all available remedies and reliefs to which he may be apparently eligible? The IJ is required to provide the apparent eligibility information. And one apparent type of relief is post-conclusion voluntary departure. Well, Your Honor, in this situation, because there was a... The discussion was originally on pre-conclusion voluntary departure, and that seemed to be, based on the record, something that Petitioner was interested in. So, to the extent that there was any additional discussion needed on that... He was interested in it, but he wasn't told what his options were. Well, he did have counsel in this situation, Your Honor, so counsel certainly could have... The regulations don't require counsel to tell him. They require the IJ to tell him, don't they? Well, the IJ did tell him about the initial form of voluntary departure, and the one that was... Can we agree that he didn't tell him about post-conclusion? The record doesn't reflect anything about post-conclusion. And the record shows everything the IJ said. Correct, Your Honor. So, we conclude from that that the IJ didn't tell him about post-conclusion. Correct, Your Honor. Okay, thank you. Thank you. Would Your Honors like... If you wouldn't mind, I'd like to make one quick point with regard to the issue, the regulatory issue that has been raised with regard to the statute. I just want to point out that, and our brief does point this out as well, that our contention is that the statute is ambiguous, and that really the question to be asked with regard to that provision is whether... The statute doesn't speak to whether an alien is actually permitted to seek administrative review. So... You made that point in your brief. So, hopefully, if you have... Do you have any further questions on that issue for me? If not, I'll go ahead and take a seat. Thank you so much, Your Honors. We'll give the rebuttal two minutes. Could you put two minutes on, please? Okay. Good morning, Your Honors. May it please the Court. Crystal Martinez, a certified law student under direct supervision of Andrew Natt, representing Mr. Viltran. In response to the government's argument regarding the TPS, actually... Put the microphone closer. Thank you. In response to the government's argument regarding TPS, actually, the record shows that when the TPS discussion came up, the IJ didn't know about the DUI conviction. The TPS discussion is on page 43 of the certified record. And the DUI conviction conversation happened on page 51 of the certified record. Additionally, in regards to voluntary departure, the argument... The government says that the IJ said it at the beginning of the hearings, which he did. And that's when Mr. Viltran was not represented by counsel. And even though it's supposed to be early in the hearings, actually, Mr. Viltran got pre-conclusion voluntary departure at the end of the hearings. In regards to the bond, the immigration judge knew that Mr. Viltran's family was putting money together to pay for another bond. And additionally, he made Mr. Viltran pay for his way back to El Salvador, a condition to grant him voluntary departure. In regard to the misadvisals... Well, with respect to the TPS issue, the regulations provide that in addition to any documentary evidence of conviction, the IJ can take into consideration, quote, any other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof. Right? And so we have Mr. Viltran saying, I had a DUI, and his attorney saying he had a DUI. Why isn't that in the mission of a party litigant and therefore sufficient evidence to show the DUI? I see my time is up. May I briefly conclude? Go ahead. Well, Your Honor, as the record indicates, Mr. Viltran did say he had a DUI conviction, but he actually wasn't convicted of a DUI. He was convicted of accessory after the fact. Additionally, like I said before, the record shows that... Where's the evidence that he wasn't convicted of a DUI when he said that he had a DUI? Well, there's no... There's nothing in the record that indicates that he was convicted of accessory after the fact, but there's actually also no evidence that he was convicted of a DUI. And like I said... You mean there's no documentary evidence? Documentary evidence. Other than the transcript of what he and his attorney said? Correct, Your Honor. However, the IJ didn't know that he had a DUI conviction when he didn't advise him of renewing the TPS. Okay. Thank you very much, Ms. Martinez. The case of Viltran v. Sessions will be submitted. We thank counsel for a very nice presentation, very good presentation. Congratulations.
judges: Bea, Owens, Plager